[Civ. No. 28716. First Dist., Div. Three. Aug. 18, 1972.]

CATERINA MINOLETTI, Plaintiff and Appellant, v.
LEO R. SABINI, Defendant and Respondent.

322

**COUNSEL**

Hoberg, Finger, Brown & Abramson and Daniel M. Hanlon for Plaintiff and Appellant.

L. F. Haeberle III and Robert E. Jensen for Defendant and Respondent.

**OPINION**

**CALDECOTT, J.**—Appellant Mrs. Caterina Minoletti was injured when the top part of a double-hung window in the kitchen of her apartment came down and amputated a part of her third right finger.

Appellant had asked respondent Leo R. Sabini, the landlord, to repair two of the windows in her kitchen, apparently because the rope was broken. The record does not disclose the length of time this condition existed.

Approximately one month before the accident, Mr. Sabini's son came to fix the windows but did not have enough rope to fix both windows.

He repaired the small window and removed the rope from the top of the large window. Although Mrs. Minoletti saw him removing the rope, she paid little attention to the remainder of his work, because she was cooking. She knew, however, that he did not fix the large window at that time. She told him that since he had a key to the apartment, he could let himself in and fix it if she were not there; he told her he would be back to fix it. The record does not reflect that he warned her of the dangerous condition of the window.

During the month prior to the accident, Mrs. Minoletti spent the daytime at her son's house, and her son drove her home almost every day. On the day of the accident, she lifted the bottom part of the window a slight bit to see if the window had been repaired. As her fingers were protruding slightly through the space between the bottom of the window and the window frame, the top part of the window suddenly came down, causing the above-described injury to her finger. She had opened the window prior to the accident while it was in a broken condition, but the top had never come down before.

At the close of the presentation of plaintiff's case, the trial court granted defendant's motion for a nonsuit. Plaintiff appeals from that judgment.

Appellant contends that there is a duty on a landlord to use ordinary care in making repairs to the premises, citing *Callahan* v. *Loughran* (1894) 102 Cal. 476 [36 P. 835]. Respondent maintains, citing *Sherrard* v. *Lidyoff*, 108 Cal.App.2d 325 [239 P.2d 28], that the mere failure to make repairs after notice or a promise to do so imposes no tort liability upon the landlord. *Sherrard* also states, "The general rule that a landlord who gratuitously undertakes to repair a defect in the leased premises, is liable for negligence in repairing the defect, is restricted in its sweep in this state by the statute mentioned. [Civ. Code, § 1942.]"[1]

*Sherrard* did not mention *Callahan* v. *Loughran, supra. Callahan* pointed out at page 481, that though the rights of the tenant to have repairs made

---

[1]Civil Code section 1942 provides: "If within a reasonable time after notice to the lessor, of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself, where the cost of such repairs does not require an expenditure greater than one month's rent of the premises, and deduct the expenses of such repairs from the rent, or the lessee may vacate the premises, in which case he shall be discharged from further payment of rent, or performance of other conditions."

can be measured by Civil Code section 1942 ". . . when the landlord undertook to make the repairs, whether pursuant to a contract or an obligation imposed by statute, or as a volunteer, he was in duty bound to use ordinary care in the conduct of the work." ■ Thus, regardless of whether a landlord in a particular situation is bound to make repairs, once he undertakes a repair, he must then use ordinary care.

In addition to the duty imposed on a landlord by Civil Code section 1942, Civil Code section 1714[2] also imposes a duty. As stated in the case of *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], " 'All persons are required to use ordinary care to prevent others being injured as the result of their conduct.' [Citations.] Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. [Citations.]

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]"

*Rowland* states that no exception should be made to the fundamental principle enunciated by section 1714 of the Civil Code, unless clearly supported by public policy. In weighing the facts of this case against the "considerations" enunciated in *Rowland* we find no grounds upon which to base an exception to the principle of section 1714.

■ A nonsuit may be granted " 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally

---

[2]Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief."

entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.'" (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 353, pp. 3152-3153.) ■ Under this criterion, the nonsuit in this case was improperly granted. A jury question was presented as to whether Mr. Sabini was negligent in failing to repair the window in a one-month period or safeguarding the window in the meantime. There is nothing in the record to indicate that he warned Mrs. Minoletti of the dangerous condition of the window with the rope removed. While it cannot be disputed that some people might be aware of such a danger, at the very least a question of fact was presented for the jury's determination as to whether a reasonable man, with Mr. Sabini's knowledge of Mrs. Minoletti's age and capacity, would have warned her of the danger which may not have been obvious to her.

The evidence does not show that, as a matter of law, Mrs. Minoletti was guilty either of contributory negligence or of assumption of the risk. She did not assume the risk if she did not know of the specific danger (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]), and we are unprepared to say that her opening the window on this occasion demonstrates lack of prudence, especially in view of the fact that she had opened it without disaster while it was in a broken condition.

Although we do not purport to suggest the eventual outcome of the case, there was at least sufficient evidence to withstand a nonsuit and to send the matters of fact to the jury.

The judgment is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.