[Civ. No. 20611.   Second Dist., Div. Three.   Apr. 19, 1955.]

MARY A. ROLINSON, Appellant, v. MYRON A.
ROLINSON, as Executor, etc., Respondent.

John W. Hill and Joseph D. Taylor for Appellant.

Carl B. Sturzenacker and Walter Monarch for Respondent.

SHINN, P. J.—The principal question on this appeal is whether there was sufficient evidence to support a finding that Mary A. Rolinson did not receive title to certain corporate stock by gift of her husband, George H. Rolinson, since deceased. Mrs. Rolinson brought suit against the defendant, Myron A. Rolinson, executor of the estate of the deceased, to quiet title to certain specifically described shares of stock. She alleged that the decedent made a gift of the stocks to her during his lifetime and that she is now owner of them and entitled to their possession. Defendant denied those claims and filed a cross-complaint seeking recovery of possession of the stock or their fair market value. The court found that plaintiff had no interest in the stocks, and gave judgment for defendant for possession for purposes of probate administration. From that judgment Mary A. Rolinson appeals.

The cross-complaint filed by the respondent and defendant contained four separate causes of action. The first was for cancellation of a joint tenancy deed of the real property of the decedent on which his home was situated, executed by him on September 10, 1952, in favor of himself and the appellant. It was alleged the deed was procured through fraud, when deceased did not possess sufficient mental capacity to make a valid transfer. The court entered judgment for the appellant on this count. The second cause of action was for recovery of a Packard automobile that was transferred to appellant on the same date. Judgment was for the appellant on this count. The third cause of action, with which this appeal is concerned, was for recovery of the stocks in question, and for the recovery of certain articles of household furniture which the appellant had in her possession. Judgment was for the appellant as to the furniture, and for respondent as to the stock. The fourth cause was for money had and received by the appellant for the use of respondent. Judgment was for the appellant on this count. Appellant therefore appeals only from that portion of the judgment on the third cause of action awarding possession and title to the stock to the respondent.

The main issue is whether a valid inter-vivos gift of the stock was made on September 28, 1952, four days before decedent's death on October 2, 1952.

George Rolinson and appellant were married November 21, 1950. Deceased was then 74 years of age and appellant was 54. After about seven months of marriage, appellant moved into another bedroom in decedent's house, and moved out of the house in June of 1952. The parties remained separated until an alleged reconciliation shortly before the death of George. June 23, 1952, Mary filed a separate maintenance action against George and July 12th was awarded $125 a month support pendente lite. July 24th an order to show cause *re* contempt was issued against the husband, returnable August 11th.

George made a will on July 7, 1952, disinheriting Mary. Late in August he was stricken with the illness that ultimately resulted in his death. He had been suffering from a heart ailment. On September 6th Mary returned to her husband and stayed with him until his death. Appellant testified that George said: "It was a lonely time of my life when you were gone." She also testified that he was not argumentative and belligerent after the reconciliation, that both were very sorry for what they had done, and George was free with his money where previously he had provided very little.

The return of appellant was followed shortly by the placing of the house in joint tenancy, and the transfer of the automobile to her. On September 28th the alleged gift of the stock took place. George was sitting up in his bed, and appellant, appellant's sister, a Mrs. Eckert, and Mr. Robert Green were visiting. Appellant and Mr. Green, however, were the only ones present at the time of the gift. Mrs. Eckert had stepped out for about a half hour to go to the drugstore.

Appellant contends that the uncontradicted testimony of herself and Green shows a valid gift of the stock and that the court was required to so find. This court cannot retry the facts. Green, it seems, was not a disinterested witness. He had a special interest in appellant's sister, Mrs. Eckert, who was sometimes known as Mrs. Green. Appellant and Green testified that George told appellant to "go get the box with the stocks in them," referring to a tin box usually kept in a closet. She brought the box to him, at which time he took the certificates, looked them over, and said: "Mary, I want you to have these. These are yours." Then he closed the box and told her to put it back where she had gotten

it, which she did. He did not endorse the stock to Mary, but said "he was going to have things changed in a few days." No reference was made to the remaining contents of the box which consisted of some pipes and jewelry, and certain papers, including a worthless bond, which were voluntarily turned over to the estate. Appellant testified that she knew endorsement was required to transfer title to the stocks. At a meeting immediately after decedent's funeral, in conversations with relatives after the death of George, Mary asserted no claim to the stocks and said that everything of value would be turned over to the estate.

The court either disbelieved the testimony of appellant and Green or believed that George did not intend by his acts and words to make a gift of the stocks to appellant.

It is not the law that a trial court must accept as true the testimony of witnesses that is uncontradicted. Their interest in the result of the case, their motives and the manner in which they testify may be such as to justify the court in disbelieving their testimony. (*Giannini* v. *Bank of America*, 101 Cal.App.2d 805 [226 P.2d 712]; *Odenthal* v. *Lee*, 113 Cal.App.2d 666 [248 P.2d 937].) In several respects which need not be enumerated the testimony of appellant and Green was subject to suspicion and it was obviously tainted by their motives and their interest in the result. The court would have been justified in disbelieving them. Upon the other hand, if the court had believed that they testified truthfully it still would not appear as a matter of law that the alleged donor had an intent to make a gift of the stock.

In *Morehead* v. *Turner*, 41 Cal.App.2d 414 [106 P.2d 969], it was said: "It is a uniform rule that to consummate a gift of personal property without consideration, under sections 1146-1148 of the Civil Code, it is necessary that there shall be an immediate surrender of the article which is the subject of the gift, together with all dominion and control over it. If dominion and control over the gift is retained by the donor until his death, it becomes merely an unexecuted and unenforceable promise to make a future gift. (*Beebe* v. *Coffin*, 153 Cal. 174 [94 P. 766].)" This is the settled law. A promise to make a gift does not accomplish a transfer of title so as to constitute the promisee the owner of the property. (*Burke* v. *Bank of America*, 34 Cal.App.2d 594 [94 P.2d 58]; *Hart* v. *Ketchum*, 121 Cal. 426 [53 P. 931]; *Beebe* v. *Coffin, supra*, 153 Cal. 174.) There was evidence from which the court could properly determine

that at most George intended to transfer the stock to Mary at a future date.

In a letter dated July 29, 1952, George wrote his brother in Ohio that he would be unable to join his brother for the fiftieth anniversary celebration of a particular club, in which letter he referred to appellant as a "gold digger." This letter was received in evidence over objection of appellant. The letter should not have been received in evidence. The state of mind of George at a time when he was separated and estranged from his wife had no relevancy to the state of his mind some months later, after they had become reconciled. The fact that he had referred to his wife as a "gold digger" was without value as evidence of the fact in issue. (*Estate of Anderson*, 185 Cal. 700, 718 [198 P. 407]; *Estate of Higley*, 64 Cal.App. 664 [222 P. 626].) But the error was harmless. The court believed that George willingly placed the home in joint tenancy and gave appellant the automobile and the articles of personal property. Thus the court impliedly determined that whatever poor opinion he held of her during the separation had been replaced by a belief that she was worthy of these gratuities. It is clear that the court attached no importance to the evidence of his previous state of mind. The record presents no deprivation of a fair trial and obviously the judgment reflects no miscarriage of justice.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.