BISHOP, P. J.
 

 Plaintiff sought in vain to recover for services rendered under a contract repudiated, during its life, by the defendant. We have not had the benefit of findings, nor of any opinion by the trial court, to indicate to us the theory on which its judgment was based. As we should do
 
 (Estate of Rule
 
 (1944), 25 Cal.2d 1, 10 [152 P.2d 1003, 1007, 155 A.L.R. 1319]) we made the best use of the evidence that we could, to support the judgment, but nevertheless we have reached these conclusions: that the plaintiff was entitled to damages for defendant’s repudiation of the contract; and that the failure of the plaintiff to produce evidence satisfactory to the trial court, by which one factor in the established formula for such damages could be ascertained with accuracy, did not warrant the judgment that plaintiff take nothing.
 

 The plaintiff was the only witness and the defendant, as the respondent on this appeal, does not question her story—
 
 *Supp. 851
 
 indeed accepts it as true (with an exception to be noted). For 15 years, the plaintiff has conducted the business of keeping some 1100 architects and engineers acquainted with the product of some 120 manufacturers. On her staff she has 10 trained college men who familiarize themselves with these products and then, by literature, word of mouth and demonstration, carry their information regularly and frequently to the architects and engineers. The bill for this service is footed by the manufacturers.
 

 In March, 1953, the defendant, a manufacturer, signed up for a year’s service, payable at the rate of $60 per month. Without any fault being found with plaintiff’s performance, but for reasons applicable to itself alone, on August 29, of the same year, the defendant wrote plaintiff a letter expressing its desire to cancel its contract. To this plaintiff replied that she only took subscribers for a year, and that that was the contract. She continued her services throughout the year for which the defendant had contracted and it made some payments after the date of its letter of repudiation. The pleadings and the evidence agree that only $420 was paid of the $720 promised.
 

 From the circumstances narrated, the conclusion might have been reached that the defendant acquiesced in plaintiff’s insistence that the contract was binding for a year. But in this event the plaintiff would have had judgment for $300, so we must presume that the trial court did not favor this theory, but was of the opinion that the defendant, without legal reason, but with the power the law recognizes, had repudiated its contract with the plaintiff while it yet had some months to run. The principle that governs the situation here presented is thus stated in
 
 Bomberger
 
 v. McK
 
 elvey
 
 (1950), 35 CaL.2d 607, 613-614 [220 P.2d 729, 733] : “It is the general rule in California and in practically all other jurisdictions that either party to an executory contract has the power to stop performance of the contract by giving notice or direction to that effect, subjecting himself to liability for damages, and upon receipt of such notice the other party cannot continue to perform and recover damages based on full performance. [Citing cases.] This is an application of the principle that a plaintiff must mitigate damages so far as he can without loss to himself. (See 5 Williston on Contracts [Rev.ed. 1937], § 1298, p. 3694.)”
 

 If, resolving all inferences in favor of the judgment that the evidence warrants, we come to the conclusion that this was
 
 *Supp. 852
 
 one of the cases in which the party who fully performs, after a repudiation by the other party, may not recover the reward for full performance, the result is not a denial of any reward, but only that any cost of performance that could have been avoided must be deducted. Certainly, by full performance, the plaintiff did no harm to the defendant and did not forfeit any of her rights. At most, she incurred an expense which she could have avoided, and to the extent that this can be established, a deduction must be made from the $300 that would otherwise be due her.
 

 Upon which party lies the burden of proving the amount to be deducted? We find it stated in
 
 Marconi Wireless Tel. Co.,
 
 v.
 
 North Pac. S.S. Co.
 
 (1918), 36 Cal.App. 653, 655 [173 P. 103, 104] : “There is a class of cases in which if the obligor to the contract repudiates it before the obligee has had an opportunity to perform, the contract price is
 
 prima facie
 
 the measure of damages, and matters of mitigation and reduction must be shown by the obligor.” The court then cites a number of cases, the last one being
 
 Ware Bros. Co.
 
 v.
 
 Cortland Cart
 
 &
 
 C. Co.,
 
 192 N.Y. 439 [85 N.E. 666, 127 Am.St.Rep 914, 22 L.R.A.N.S. 272], concerning which it said: “In the last-mentioned case an advertiser desired to cancel its contract with a publisher under which the latter was to publish an advertisement once a month for twelve months for a certain sum to be paid when the contract was fully performed. The publisher refused to consent to the cancellation, and continued the publication for the entire period, and upon the advertiser declining to pay therefor, brought an action for the contract price. Upon the trial the plaintiff proved the contract and its performance, and rested. Thereupon the defendant produced evidence to the effect that it had canceled the contract, and rested. It was held that the contract was
 
 prima facie
 
 the measure of damages, and the rule applied that where a contract for future employment had been entered into and afterward revoked by the employer, in an action for breach of contract the damages are
 
 prima facie
 
 the amount of wages for the full term, and the burden of proof is upon the defendant to show facts in mitigation of damages.” These words were then quoted from the opinion in the New York case: “The distinguishing feature in this case, as we regard it, is that the publishing of an advertisement in a periodical is the same as the publishing in a daily or weekly newspaper, which involves the investment of no additional capital or the use of any material other than the ink used and the paper
 
 *Supp. 853
 
 upon which, it is printed, and these articles are of such trivial value as not in our judgment to change the character of the contract from one for services to be rendered.”
 

 The Marconi case was cited in
 
 Landon
 
 v.
 
 Hill
 
 (1934), 136 Cal.App. 560, 568 [29 P.2d 281, 284], and
 
 Carrier
 
 v.
 
 Piggly Wiggly
 
 (1936), 11 Cal.App.2d 180, 185 [53 P.2d 400, 402], as authority for the conclusion that the burden of proving mitigation of damages was on the defendant. It is to be noted, however, that the Marconi case, because of its facts, lined itself up with those cases that hold that the burden that is upon the plaintiff to prove his damages includes the burden of proving the expense incurred in fulfilling a repudiated contract.
 

 It seems to us that our case falls within the rule first recognized in the Marconi case rather than within the latter. But even if we are wrong in so concluding, the judgment should not be affirmed. The only evidence upon the question of the saving that might have been made by acquiescing in defendant’s repudiation of the contract was that of the plaintiff whose theory was that it cost her no less to serve 119 subscribers than to perform her contracts with 120 after the initial expenditure of time by her staff in getting acquainted with defendant’s products. Evidently the trial court did not find her testimony convincing. The plaintiff, of course, was an interested party and the trial court was free to reject her testimony on that ground even though she was otherwise unimpeached.
 
 (Odenthal
 
 v.
 
 Lee
 
 (1952), 113 Cal.App.2d 666, 669 [248 P.2d 937, 939].) If that to which she testified is not a correct theory for the measurement of the cost that she could have saved by nonperformance, after defendant’s repudiation, what theory is there that warranted the trial court in saying that the cost may have equalled $300, and so the plaintiff was entitled to nothing? We wish we had some intimation of the line of reasoning followed by the trial court, for we are sure its judgment was not an arbitrary decision. Respondent’s brief fails to cause us to question our conclusion that even in the absence of any acceptable evidence, the finding is inescapable that the plaintiff could not have saved herself as much as $300 by rendering no service after defendant’s repudiation. A judgment for some sum, then, should have been awarded the plaintiff.
 

 Upon a new trial it may be that the trier of fact will conclude that the little, if any, saving that the plaintiff could have effected by ending her service to the defendant appeared
 
 *Supp. 854
 
 so small as compared to the damages for which she would be liable if she misjudged defendant’s letter, and it was not a legal repudiation of its contract, that common sense dictated that she had better perform fully. In such a ease, the cost added by full performance is not to be deducted. See
 
 Bomberger
 
 v.
 
 McKelvey, supra,
 
 35 Cal.2d 607, 614 [220 P.2d 729, 733-734], It is not to be expected, moreover, that that cost can be established with mathematical exactness, but this is not required.
 
 (Ross
 
 v.
 
 Frank W. Dunne Co.
 
 (1953) 119 Cal.App.2d 690, 700-702 [260 P.2d 104, 110].
 
 Hensler
 
 v.
 
 City of Los Angeles
 
 (1954), 124 Cal.App.2d 71, 87 [268 P.2d 12, 23-24].)
 

 The judgment is reversed. The appeal from the nonappealable order denying motion for new trial is dismissed.
 

 Patrosso, J., and Swain, J., concurred.